# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN BROCK, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 18-CV-3814 |
| | : | |
| CORRECTIONS EMERGENCY | : | |
| RESPONSE TEAM (CERT), *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

**GOLDBERG, J.**                                                                                                                          **OCTOBER 29, 2018**

Plaintiff Kevin Brock, a prisoner currently incarcerated at SCI Phoenix, brings this *pro se* civil action pursuant to 42 U.S.C. § 1983, against the Corrections Emergency Response Team (CERT), Secretary John Wetzel, Superintendent Tammy Ferguson, and John/Jane Doe Defendants. He alleges that his constitutional rights were violated in connection with the loss of art supplies, clothing, and photographs. Brock has filed a Motion for Leave to Proceed *In Forma Pauperis*. (ECF No. 4.) For the following reasons, the Court will grant Brock leave to proceed *in forma pauperis* and dismiss his Complaint with leave to amend.

## I.     FACTS

Brock's claims stem from the Pennsylvania Department of Corrections' movement of prisoners from the now defunct SCI Graterford to the newly constructed SCI Phoenix in July of 2018. According to the Complaint, CERT is a team of prison staff that, under the direction of Wetzel and Ferguson, moved the legal and personal property of inmates from SCI Graterford to SCI Phoenix between July 12-15, 2018. Brock alleges that during this period,

> CERT . . . threw prisoners['] legal work, papers, paintings, artwork and photos away, drew/wrote Nazi signs, nigger and penises on photos of dead relatives of other prisoners, placed remotes in Vaseline and performed all other type of

1

improper and destructive things to prisoners' property, stole wedding bands, rings, necklaces/chains, watches, sneakers and other property.

(Compl. at 7-8.)[1]

Brock alleges that after being transferred to SCI Phoenix and receiving his property, he noticed that he was missing over 120 photographs "of dead relatives" as well as over $200.00 worth of art supplies and "sweat clothing (shorts, pants, shirt)." (*Id.* at 6.) The loss of his property caused him "to lose it mentally and end up in a POC (Psychiatric Observation Cell)." (*Id.* at 7.) Brock grieved the loss of his property, seeking $1,395.09. (*Id.* at 12.) He also alleges that, in light of the number of inmate grievances about CERT's conduct, the grievance process was suspended. (*Id.* at 8.) Brock contends that Ferguson and Wetzel covered up the "hateful, unlawful, and criminal acts by CERT." (*Id.* at 10.) He also alleges that Ferguson "took funds allotted to [SCI Phoenix] for services and programs for the year and improperly used it to reach small settlements with prisoners." (*Id.* at 8-9.) He also indicates that neither Ferguson nor Wetzel reported "the hate crimes and criminal acts" to law enforcement. (*Id.* at 9.)

Based on the above allegations, Brock filed the instant civil action, alleging that he was denied equal access to the courts, experienced due process and equal protection violations, and that he experienced an illegal search and seizure of his property. (*Id.* at 10.) As relief, he seeks a declaratory judgment that his rights were violated, damages, and appointment of counsel. (*Id.* at 10-11.)

## II. STANDARD OF REVIEW

The Court will grant Brock leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[2] Accordingly, 28 U.S.C.

---

[1] The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.

[2] However, as Brock is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

2

§ 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Brock is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). For the following reasons, Brock's Complaint fails to state a claim.

### A. Lack of Standing

Some of Brock's allegations pertain to general conduct that occurred during the transition, but which did not affect him. "[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim. *See Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) (quotations omitted)). Specifically, "[t]o have standing to bring a claim in federal court, a plaintiff must show, inter alia, that he has 'suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.'" *Marin v. Leslie*, 337 F. App'x 217, 219 (3d Cir. 2009) (per curiam) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Brock describes how CERT defaced inmates' photographs and destroyed

3

their legal property, but the only allegations specific to him are those concerning the loss of his photographs, clothing, and art supplies. If Brock sought to raise claims based on harm caused to other inmates' legal or personal property on account of actions taken by CERT, he lacks standing to do so. The Court will therefore dismiss any claims based on the Defendants' conduct that did not directly affect Brock's property or cause him harm.

### B. Failure to Investigate

To the extent that Brock is alleging that authorities have not investigated the abuses that occurred during the transfer, that claim fails, as there is no free-standing right to a government investigation. *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) ("[A]n allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." (quotations omitted)); *see also Boseski v. N. Arlington Municipality*, 621 F. App'x 131, 135 (3d Cir. 2015) (per curiam) ("Boseski has no cognizable claim against a government entity for its failure to investigate or bring criminal charges against another individual."). Accordingly, Brock cannot state a claim based on authorities' failure to investigate CERT's actions.

### C. Shutting Down the Grievance System

Brock's allegations about the shutting down of the grievance system also do not state a claim. "Prison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam). Accordingly, although shutting down the grievance system would affect the analysis regarding whether Brock properly exhausted his claims as required by the Prison Litigation Reform Act, it does not provide an independent basis for a constitutional claim.

4

### D. Use of Program Funds for Settlement

Brock alleges that funds were directed from prison programming toward settlement of inmates' claims arising from the loss or destruction of property during the transfer. Hernandez does not provide any additional allegations regarding what programs were lost or how the loss of those programs harmed him, so he has not stated a claim based on this generalized allegation. Furthermore, with regard to decisions about budget and programming, "[s]ubstantial deference must be given to prison administrators' judgment." *Young v. Beard*, 284 F. App'x 958, 961 (3d Cir. 2008) (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)). The Complaint, as pled, does not suggest that prison administrators made a constitutionally impermissible budgeting or programming choice. Accordingly, the Court will dismiss this claim.

### E. First Amendment Claims

Brock also alleges that he was denied access to the courts, in violation of the First Amendment. "A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting *Lewis*, 518 U.S. at 350). In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id*. Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney. *Diaz,* 532 F. App'x at 63 (citing *Bounds v.*

5

*Smith*, 430 U.S. 817, 831 (1977) and *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (per curiam).

Here, Brock does not allege that he himself was deprived of legal materials. Instead, he asserts that other prisoners were deprived of such materials. However, as discussed above, Brock does not have standing to raise those claims on behalf of other prisoners. Moreover, Brock has not stated any other basis for a First Amendment claim. Accordingly, the Court will dismiss Brock's First Amendment claims at this time.

### F. Fourth Amendment Claims

Brock also has not stated a claim under the Fourth Amendment. "[P]risoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration."). Accordingly, the events described by Brock do not give rise to a Fourth Amendment claim.

### G. Fourteenth Amendment Claims

The Court understands Brock to be pursuing due process and equal protection claims under the Fourteenth Amendment based on the loss of his property. However, there is no basis for a due process claim because Pennsylvania law provides Brock with an adequate state remedy. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984))); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (per curiam) (explaining that

6

the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property). Accordingly, Brock has not stated a basis for a due process claim.

Brock also vaguely suggests that his equal protection rights were violated by the loss of his property. To state an equal protection claim on a "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008). Nowhere in Brock's Complaint, however, does he set forth facts suggesting that he was treated differently from similarly situated inmates. Instead, his Complaint suggests that several inmates experienced the loss or destruction of property during the transfer from SCI Graterford to SCI Phoenix. Accordingly, Brock has not stated a basis for an equal protection claim at this time.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Brock leave to proceed *in forma pauperis* and dismiss his Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). In light of Brock's *pro se* status, the Court will give him an opportunity to file an amended complaint in the event he can state a plausible basis for a constitutional claim. Because Brock has not yet stated a claim, his request for an attorney, which is contained in the Complaint, is denied at this time. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis). An appropriate Order follows.

                                  **BY THE COURT:**

                                  **/s/ Mitchell S. Goldberg**
                                  _____
                                  **MITCHELL S. GOLDBERG, J.**