# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN BROCK, : | |
|     Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 18-CV-3814 |
| : | |
| CORRECTIONS EMERGENCY : | |
| RESPONSE TEAM (CERT), *et al.*, : | |
|     Defendants. : | |

## MEMORANDUM

**GOLDBERG, J.**                                                                                                                                 DECEMBER 7, 2018
**2018**

      On September 6, 2018, *pro se* Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983 against the Corrections Emergency Response Team ("CERT"), Secretary John Wetzel, Superintendent Tammy Ferguson, and John/Jane Doe Defendants. (ECF No. 1.) In his Complaint, Brock alleged that his constitutional rights were violated in connection with the loss of art supplies, clothing, and photographs during his transfer from the now defunct SCI Graterford to SCI Phoenix. By Order entered on September 14, 2018, the Court directed Brock to either pay the $400.00 filing fee or submit a motion for leave to proceed *in forma pauperis* with a copy of his prisoner account statement within thirty (30) days. (ECF No. 3.)

      The Court received Brock's Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 4) and Prisoner Trust Fund Account Statement (ECF No. 5) on September 24, 2018. By Memorandum and Order entered on October 29, 2018, the Court granted Brock leave to proceed *in forma pauperis* and dismissed his Complaint. (ECF Nos. 6, 7.) Specifically, the Court noted that: (1) Brock lacked standing to assert claims based on harm caused to other inmates' legal or personal property; (2) Brock had no right to a government investigation of any abuses that

1

occurred during the transfer; (3) Brock could not maintain a claim regarding the suspension of the grievance system because inmates do not have a constitutional right to a grievance process; (4) the Complaint did not suggest that prison administrators made a constitutionally impermissible budgeting or programming choice; (5) Brock had failed to state a First Amendment access to the courts claim; (6) Brock could not maintain a claim under the Fourth Amendment regarding the loss of his property; and (7) Brock had not stated a basis for Fourteenth Amendment due process and equal protection claims regarding the loss of his property.  The Court granted Brock leave to file an amended complaint in the event he could set forth a plausible claim for relief.

The Court received Brock's Amended Complaint on November 8, 2018.  (ECF No. 8.) For the following reasons, the Court will dismiss the Amended Complaint, with the exception of Brock's First and Sixth Amendment claims.

**I.     FACTS**

As noted above, Brock's claims stem from the Pennsylvania Department of Corrections' ("DOC") movement of prisoners from the now defunct SCI Graterford to the newly constructed SCI Phoenix in July of 2018.  CERT is a team of prison staff that, under the direction of Wetzel and Ferguson, moved the legal and personal property of inmates from SCI Graterford to SCI Phoenix in July of 2018.

Brock alleges that after being transferred to SCI Phoenix and receiving his property, he discovered that he was missing "art work, art supplies, sweats and other personal property." (Am. Compl. at 4.)[1]  He was also missing over 120 family photographs, including several of

---

[1] The Court uses the pagination assigned to the Amended Complaint by the CM/ECF docketing system.

2

deceased relatives, and a letter from his deceased father. (*Id.* at 5.) Brock states that he suffers from "pica and several [other] serious mental health illnesses and disorders." (*Id.*) His art "is a part of therapy that helps him relax and stay calm." (*Id.*)

After discovering the loss of his property, Brock's "pica became active and he swallowed six pencils and one pen." (*Id.* at 9.) He had to be taken to the hospital because of the "seriousness of his injuries." (*Id.*) After he returned to SCI Phoenix, he was placed in a Psychiatric Observation Cell "under consistent and intense watch until he began to come around shortly and realize that his 120 family photos and dead father's letter [last words to him] will never be had again." (*Id.*)

Brock alleges that he "heard about the destructive, hateful and criminal acts of CERT from some Graterford officers-who commented they got in arguments with and filed complaints on CERT officers for their treatment of [his] and [other p]risoners' property and legal belongings-and from other [p]risoners about property stolen from them, destroyed, and discarded during CERT's seizure of the legal and personal materials and property." (*Id.*)

Brock grieved the loss of his property. (*Id.*) On October 4, 2018, Unit Manager Sellers upheld in part and denied his part his grievance, offering $27.57 for the value of Brock's sweat clothing. (*Id.*) Brock appealed, seeking $1,862.41 for all of his missing property. (*Id.* at 10.) He alleges that Superintendent Ferguson has not answered his appeal, and that she suspended the grievance process in light of the number of inmate grievances about CERT's conduct. (*Id.*) He contends that Ferguson and Wetzel covered up the "criminal, unlawful and inhumane acts committed by CERT" by suspending the grievance process and by "falsely reporting to the public that the move went smoothly." (*Id.* at 6.) He also alleges that Ferguson took "monies

assigned to the activities department for programs and services" and used it to offer settlements to prisoners for their property. (*Id.* at 5.)

Brock also takes issue with the DOC's new mail policy which requires a majority of mail sent to inmates to be addressed to SMART Communications in St. Petersburg, Florida, before being forwarded to the inmates at their respective institutions. (*Id.* at 7.) Brock argues that this policy violates the First and Sixth Amendments because the mail, including privileged communications from attorneys, is opened, photocopied, and "placed in a Smart Communication database for 7 years before being destroyed." (*Id.*) He also contends that this policy prevents him and other prisoners "from reporting the . . . racial, hateful and criminal actions of CERT John/Jane Does, Wetzel, Ferguson and Does and from reporting" about various conditions that exist at SCI Phoenix, including cracks in floors and walkways, sinking areas, and human waste that backs up into neighboring cells' toilets. (*Id.*)

Based on the above allegations, Brock contends that the Defendants' actions have violated his rights under the First, Fourth, Sixth, Eighth, Ninth, and Fourteenth Amendments. He seeks injunctive relief and damages. (*Id.* at 12.)

## II. STANDARD OF REVIEW

As noted above, the Court previously granted Brock leave to proceed *in forma pauperis*. Accordingly, the Court is required to dismiss the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

4

*Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Brock is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). For the following reasons, Brock's Amended Complaint fails to state a claim, except for his First and Sixth Amendment claims.

### A. Failure to Investigate

As noted above, Brock again faults Ferguson and Wetzel for covering up the "criminal, unlawful and inhumane acts committed by CERT." (Am. Compl. at 6.) To the extent that Brock is again alleging that authorities have not investigated the abuses that occurred during the transfer, that claim fails, as there is no free-standing right to a government investigation. *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) ("[A]n allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." (quotations omitted)); *see also Boseski v. N. Arlington Municipality*, 621 F. App'x 131, 135 (3d Cir. 2015) (per curiam) ("Boseski has no cognizable claim against a government entity for its failure to investigate or bring criminal charges against another individual."). Accordingly, Brock cannot state a claim based on authorities' failure to investigate CERT's actions.

### B. Shutting Down the Grievance System

Again, Brock's allegations about the shutting down of the grievance system also do not state a claim. "Prison inmates do not have a constitutionally protected right to a grievance

5

process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam). Accordingly, although shutting down the grievance system would affect the analysis regarding whether Brock properly exhausted his claims as required by the Prison Litigation Reform Act, it does not provide an independent basis for a constitutional claim.

### C. Use of Program Funds for Settlement

Brock again alleges that funds were redirected from prison programming toward settlement of inmates' claims arising from the loss or destruction of property during the transfer. Brock does not provide any additional allegations regarding what programs were lost or how the loss of those programs harmed him, so he has not stated a claim based on this generalized allegation. Furthermore, with regard to decisions about budget and programming, "[s]ubstantial deference must be given to prison administrators' judgment." *Young v. Beard*, 284 F. App'x 958, 961 (3d Cir. 2008) (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)). The Amended Complaint, as pled, does not suggest that prison administrators made a constitutionally impermissible budgeting or programming choice. Accordingly, the Court will dismiss this claim.

### D. First and Sixth Amendment Claims

Brock suggests that the loss of his property violated his First Amendment rights because he "has a [F]irst [A]mendment expression right in his created art work." (Am. Compl. at 5.) The Court recognizes that "artwork, like other non-verbal forms of expression, may under some circumstances constitute speech for First Amendment purposes," *Serra v. United States General Svcs. Admin.*, 847 F.2d 1045, 1048 (2d Cir. 1988). Here, Brock suggests that the Defendants have violated his First Amendment right to express himself through artwork by losing his

6

artwork and art supplies and by not replacing them or compensating him for them. Given his allegations, the Court will allow Brock to proceed on this claim at this time.

Brock also suggests that the DOC's new mail policy violates the First and Sixth Amendments. Specifically, he alleges that after being sent to SMART Communications, the mail, including privileged communications from attorneys, is opened, photocopied, and "placed in a Smart Communication database for 7 years before being destroyed." (Am. Compl. at 7.) Prisoners have a First Amendment right to use the mail. *Jones v. Brown*, 461 F.3d 353, 358 (3d Cir. 2006). Thus, "[r]estrictions on prisoners' mail are justified only if they 'further[] one or more of the substantial government interests of security, order and rehabilitation . . . [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved.'" *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (quoting *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)) (all alterations except for first in original). Moreover, an inmate's right "to send and receive legal mail is uncontroverted and implicates both First and Sixth Amendment concerns, through the right to petition the government and the right of access to the courts." *Proudfoot v. Williams*, 803 F. Supp. 1048, 1052 (E.D. Pa. 1992). Given Brock's allegations, the Court will permit him to proceed on his First and Sixth Amendment claims regarding the DOC's mail policy at this time.

E. **Fourth Amendment Claims**

Brock again has not stated a claim under the Fourth Amendment. "[P]risoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally

7

inconsistent with incarceration."). Accordingly, the events described by Brock do not give rise to a Fourth Amendment claim.

F.  **Eighth Amendment Claims**

The destruction of Brock's property also does not provide a basis for a claim under the Eighth Amendment. Conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment if they satisfy two criteria. First, the conditions "must be, objectively, sufficiently serious" such that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations and internal quotation marks omitted). Second, the official responsible for the challenged conditions must exhibit a "sufficiently culpable state of mind," which "[i]n prison-conditions cases . . . is one of deliberate indifference to inmate health or safety." *Id.* While the Court does not condone the intentional destruction of an inmate's property, the destruction of property does not equate to a sufficiently serious deprivation that would give rise to a claim under the Eighth Amendment. *See Payne v. Duncan*, No. 3:15-CV-1010, 2017 WL 542032, at *9 (M.D. Pa. Feb. 9, 2017) ("Plaintiff's claim for destruction of property under the Eighth Amendment does not constitute a deprivation of life's necessities."), *aff'd*, 692 F. App'x 680 (3d Cir. 2017); *Dean v. Folino*, No. CIV.A. 11-525, 2011 WL 4527352, at *3 (W.D. Pa. Aug. 22, 2011) (allegations regarding destruction of property did not state Eighth Amendment claim), *report and recommendation adopted*, No. CIV.A. 11-525, 2011 WL 4502869 (W.D. Pa. Sept. 28, 2011).

G.  **Ninth Amendment Claims**

The Ninth Amendment states that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const.

8

amend. IX. This Court is not aware of any authority that would provide a basis for a claim under the Ninth Amendment based on the destruction of an inmate's personal or legal property. Indeed, courts have generally rejected Ninth Amendment claims raised by prisoners based on complaints about prison conditions. *Cf. Murray v. Bledsoe*, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam) ("Although there is some authority for the proposition that the Ninth Amendment is a source of fundamental rights . . . no court of which we are aware has held that the Ninth Amendment establishes a right to choose one's cellmate." (internal citation omitted)); *Parnisi v. Colorado State Hosp.*, 992 F.2d 1223 (10th Cir. 1993) (unpublished table decision) (observing that the Ninth Amendment "has never been applied to prevent the denial of medical treatment to prisoners"); *Muniz v. Goord*, No. 9:04-CV-0479, 2007 WL 2027912, at *9 (N.D.N.Y. July 11, 2007) (collecting cases). Accordingly, the Court will dismiss Hernandez's Ninth Amendment claims.

### H. Fourteenth Amendment Claims

The Court understands Brock to again be pursuing due process and equal protection claims under the Fourteenth Amendment based on the loss of his property. However, there is no basis for a due process claim because Pennsylvania law provides Brock with an adequate state remedy. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984))); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (per curiam) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful

9

deprivation of property). Accordingly, Brock has again not stated a basis for a due process claim.

Brock also vaguely suggests that his equal protection rights were violated by the loss of his property. To state an equal protection claim on a "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008). Nowhere in Brock's Complaint, however, does he set forth facts suggesting that he was treated differently from similarly situated inmates. Instead, his Amended Complaint suggests that several inmates experienced the loss or destruction of property during the transfer from SCI Graterford to SCI Phoenix. Accordingly, Brock has again not stated a basis for an equal protection claim.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss all of Brock's claims, with the exception of his First and Sixth Amendment claims. An appropriate Order follows.