IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| KEVIN BROCK, | : | |
| --- | --- | --- |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| CORRECTIONS EMERGENCY | : | NO. 18-3814 |
| RESPONSE TEAM (CERT), *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM**

**Goldberg, J.**                                                                                                                              February 10, 2020

      On September 6, 2018, *pro se* Plaintiff Kevin Brock filed a Complaint, pursuant to 42 U.S.C. § 1983, against the Corrections Emergency Response Team ("CERT"), Secretary John Wetzel, Superintendent Tammy Ferguson, and John/Jane Doe Defendants (collectively, "Defendants"). Plaintiff alleges that his constitutional rights were violated in connection with the loss of art supplies, clothing, and photographs during his transfer from the now defunct SCI Graterford to SCI Phoenix. By Memorandum and Order entered on October 29, 2018, I granted Plaintiff leave to proceed *in forma pauperis* and dismissed his Complaint under 28 U.S.C. § 1915(e)(2)(B)(ii),[1] but gave him leave to file an amended complaint in the event he could set forth a plausible claim for relief.

      Plaintiff filed his Amended Complaint on November 8, 2018, setting forth claims against Wetzel, Ferguson, and various John/Jane Doe Defendants from CERT under the First, Fourth,

---

[1]     Under this section "[t]he court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

Sixth, Eighth, Ninth and Fourteenth Amendments, again in connection with the loss and/or destruction of his art supplies and photographs. Under the § 1915 screening standard, I again found that Plaintiff failed to state a plausible claim under the Fourth, Eighth, Ninth, and Fourteenth Amendments, but declined to dismiss his First and Sixth Amendment claims. Thereafter, I directed Defendants to file a response to the Amended Complaint.

Defendants Wetzel and Ferguson ("Commonwealth Defendants") filed the present Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that Plaintiff's remaining First and Sixth Amendment causes of action fail to state claims upon which relief may be granted. Plaintiff has not filed a response to the Motion.[2] For the following reasons, I will grant the Motion and dismiss the Amended Complaint.

## I. FACTS IN THE AMENDED COMPLAINT

Plaintiff's claims stem from the Pennsylvania Department of Corrections' ("DOC") movement of prisoners from the now-defunct SCI Graterford to the newly constructed SCI Phoenix in July of 2018. CERT is a team of prison staff that, under the direction of Wetzel and Ferguson, moved the legal and personal property of inmates from SCI Graterford to SCI Phoenix in July of 2018.

According to the Amended Complaint,[3] after Plaintiff was transferred to SCI Phoenix and received his property, he discovered that he was missing "art work, art supplies, sweats and other

---

[2] Approximately one month after the filing of the Motion to Dismiss, Plaintiff filed a Motion for Appointment of Counsel, but no response to the Motion to Dismiss. I denied Plaintiff's request for appointment of counsel without prejudice and reminded him that Defendants had a pending Motion to Dismiss. Several months have passed and Plaintiff has yet to file a response.

[3] In deciding a motion under Federal Rule of Civil Procedure, the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to

personal property." (Am. Compl. at 4.) Plaintiff alleges he was also missing over 120 family photographs, including several of deceased relatives, and a letter from his deceased father. (Id. at 5.) Plaintiff states that he suffers from "pica and several [other] serious mental health illnesses and disorders." (Id.) His art "is a part of therapy that helps him relax and stay calm." (Id.)

After discovering the loss of his property, Plaintiff's "pica became active and he swallowed six pencils and one pen." (Id. at 9.) He had to be taken to the hospital because of the seriousness of his injuries. (Id.) After he returned to SCI Phoenix, he was placed in a Psychiatric Observation Cell "under consistent and intense watch until he began to come around shortly and realize that his 120 family photos and dead father's letter [last words to him] will never be had again." (Id.)

Plaintiff alleges that he "heard about the destructive, hateful and criminal acts of CERT from some Graterford officers—who commented they got in arguments with and filed complaints on CERT officers for their treatment of [his] and [other p]risoners' property and legal belongings—and from other [p]risoners about property stolen from them, destroyed, and discarded during CERT's seizure of the legal and personal materials and property." (Id.)

Plaintiff grieved the loss of his property. On October 4, 2018, Unit Manager Sellers upheld in part and denied his part his grievance, offering $27.57 for the value of Plaintiff's sweat clothing. (Id.) Plaintiff appealed, seeking $1,862.41 for all of his missing property. (Id. at 10.) He alleges that Superintendent Ferguson has not answered his appeal, and that she suspended the grievance process in light of the number of inmate grievances about CERT's conduct. (Id.) He contends that Ferguson and Wetzel covered up the "criminal, unlawful and inhumane acts committed by CERT" by suspending the grievance process and by "falsely reporting to the public that the move

---

the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

3

went smoothly." (Id. at 6.) He also alleges that Ferguson took "monies assigned to the activities department for programs and services" and used it to offer settlements to prisoners for their property. (Id. at 5.)

Plaintiff also takes issue with the DOC's new mail policy which requires that a majority of mail sent to inmates be addressed to SMART Communications in St. Petersburg, Florida before being forwarded to the inmates at their respective institutions. (Id. at 7.) Plaintiff argues that this policy violates the First and Sixth Amendments because the mail, including privileged communications from attorneys, is opened, photocopied, and "placed in a Smart Communication database for 7 years before being destroyed." (Id.) He also contends that this policy prevents him and other prisoners "from reporting the . . . racial, hateful and criminal actions of CERT John/Jane Does, Wetzel, Ferguson and Does and from reporting" about various conditions that exist at SCI Phoenix, including cracks in floors and walkways, sinking areas, and human waste that backs up into neighboring cells' toilets. (Id.)

Based on the above allegations, Plaintiff contends that Defendants' actions have violated his rights under the First, Fourth, Sixth, Eighth, Ninth, and Fourteenth Amendments, and he seeks injunctive relief and damages. (Id. at 12.) As noted above, the only remaining claims are those pursuant to the First and Sixth Amendments.

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly,

550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and only a complaint that states a plausible claim for relief survives a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id. at 679.

The Court of Appeals has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. Id. at 365. Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 679). The last step is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679).

A prisoner's *pro se* complaint should be "held to less stringent standards than formal pleadings drafted by lawyers." United States ex rel. Walker v. Fayette Cnty., Pa., 599 F.2d 573, 575 (3d Cir. 1979) (citing Haines v. Kerner, 404 U.S. 519, 521 (1972)). The court must construe the facts stated in the complaint liberally in favor of the plaintiff. Haines, 404 U.S. at 520. "Yet there are limits to our procedural flexibility. For example, *pro se* litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013). Thus, even a *pro se* complaint must conform with the requirements of

Rule 8(a) of the Federal Rules of Civil Procedure, which "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" or "naked assertions" that are devoid of "factual enhancement." Iqbal, 556 U.S. at 678 (internal quotations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do." Id.

## III. DISCUSSION

Plaintiff's sole remaining § 1983 claims allege violations of the First and Sixth Amendments. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

Defendants Ferguson and Wetzel seek dismissal of both claims, arguing that: (1) they are immune from suit in their official capacities under the Eleventh Amendment; (2) they are entitled to qualified immunity on the First Amendment claim for destruction of art and art supplies; and (3) the First and Sixth Amendment claim for injunctive relief regarding the mail policy is moot.

### A. First Amendment and Section 1983 Claims for Damages Against Commonwealth Defendants in Their Official Capacities

Defendants Ferguson and Wetzel first move for dismissal of any First Amendment or § 1983 claims for money damages brought against them in their official capacities.

The Eleventh Amendment provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment presupposes that each state is a sovereign entity in our federal system and that, as a sovereign, it is not amenable to the suit of an individual without its consent. Seminole Tribe of Fl. v. Fl., 517 U.S. 44, 54 (1996). The type of relief sought is

irrelevant—the Eleventh Amendment bars an action regardless of whether the plaintiff seeks legal or equitable relief. Id. at 58.

The Eleventh Amendment also extends immunity to suits for retrospective monetary relief against state officials in their official capacity. Kentucky v. Graham, 473 U.S. 159, 169–70 (1985). This is because "a suit against a state official in his or her official capacity is . . . no different from a suit against the State itself." Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989). Notably, however, the Eleventh Amendment does not bar claims against a state officer in his official capacity for prospective injunctive relief or claims against a state official in his individual capacity for money damages. Wongus v. Correctional Emergency Response Team, 389 F. Supp. 3d 294, 299 (E.D. Pa. 2019) (citing Hafter v. Melon, 502 U.S. 21, 30–31 (1991); J.C. v. Ford, 674 F. App'x 230, 232 (3d Cir. 2016)).

Here, both Wetzel and Ferguson are employees of the Pennsylvania Department of Corrections, which is an executive department of the Commonwealth of Pennsylvania entitled to Eleventh Amendment immunity. 71 P.S. § 61(a). As Eleventh Amendment immunity extends to state officials in their official capacity, any claims for monetary damages against Wetzel and Ferguson in their official capacities are barred and must be dismissed.

### B. First Amendment Claim Regarding Plaintiff's Loss of Art Work and Supplies Against Wetzel and Ferguson in Their Individual Capacities

Defendants Wetzel and Ferguson next seek dismissal of Plaintiff's First Amendment claim against them in their individual capacities.

Plaintiff posits that the loss of his artwork and art supplies implicated his First Amendment rights because he maintains a First Amendment right of freedom of expression, speech, and to communicate. He reasons that Defendants, acting in their individual capacities, violated his First Amendment right of expression by losing his artwork and art supplies and by not replacing them

7

or compensating him for them. Defendants Wetzel and Ferguson contend that they are entitled to qualified immunity on this claim.

Under a qualified immunity defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223. 231 (2009). The Supreme Court has consistently "stressed the importance of resolving [qualified] immunity questions at the earliest possible stage of the litigation." Hunter v. Bryant, 502 U.S. 224, 227, (1991); see also Miller v. Clinton Cty., 544 F.3d 542, 547 (3d Cir. 2008).

To overcome a defense of qualified immunity, a plaintiff must "plead[] facts showing that (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v al-Kidd, 563 U.S. 731, 735 (2011). "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Bistrian v. Levi, 696 F.3d 352, 366 (3d Cir. 2012) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "To meet this test, generally 'there must be sufficient precedent at the time of [the defendant's] action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited.'" Id. (quoting McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001)). Thus, to overcome the assertion of qualified immunity at the motion to dismiss

8

stage, a plaintiff must sufficiently plead not only a violation of a constitutional or statutory right, but also a violation of a clearly-established one. Id.

Here, Plaintiff alleges that the taking of his art and art supplies violates the First Amendment. It is clear that the First Amendment protects the right to receive and disseminate ideas. Kreimer v. Bureau of Police for Town of Morristown, 958 F.2d 2142, 1253–55 (3d Cir. 1992). "[I]ncarceration does not strip one of his First Amendment rights, and the guarantees of that constitutional provision are applicable to states under the Fourteenth Amendment." Miller v. Ferguson, No. 19-2456, 2019 WL 4933404, at *2 (E.D. Pa. Oct. 4, 2019) (citing Cruz v. Beto, 405 U.S. 319 (1972); Long v. Parker, 390 F.2d 816 (3rd Cir. 1968)). "[A]rtwork, like other non-verbal forms of expression, may under some circumstances constitute speech for First Amendment purposes." Serra v. United States Gen. Servs. Admin., 847 F.2d 1045, 1048 (2d Cir. 1988).

Nonetheless, Plaintiff does not identify—and I cannot find—any precedent that would have "put Defendants on notice that [their] conduct [was] constitutionally prohibited." Bistrian, 696 F.3d at 366. Indeed, the law suggests that mere confiscation of a prisoner's artwork does not violate First Amendment absent allegations that the prisoner was prevented from artistically expressing himself. Picarella v. Brouse, No. 16-501, 2017 WL 818880, at *3 (M.D. Pa. Mar. 2, 2017); see also Tarselli v. Harkleroad, No. 10-1266, 2012 WL 603219, at *7 (W.D. Pa. Feb. 23, 2012) (finding "no authority to support Plaintiff's claim that he has a protectable First Amendment interest in the right to possess artwork, drawings and publications"). Here, Plaintiff's First Amendment claim is simply premised on the destruction of his property. "[T]he destruction of a prisoner's personal property does not implicate the First Amendment merely because the destroyed

9

property is allegedly the product of expression." [4] Miller v. Ferguson, No. 19-2456, 2019 WL 4933404, at *2 (E.D. Pa. Oct. 4, 2019); see also Hines v. Ferguson, No. 19-3139, 2019 WL 4772215, at *3 (E.D. Pa. Sept. 27, 2019).

As there is no case law to suggest that a reasonable official would understand that the destruction of Plaintiff's artwork and art supplies might violate his First Amendment rights, I cannot find that Plaintiff possessed such a "clearly established" right. In turn, I find that Defendants Wetzel and Ferguson are entitled to qualified immunity on this claim.

## C. First and Sixth Amendment Claim Seeking Injunctive Relief

Plaintiff's last remaining claim against Defendants Wetzel and Ferguson alleges that the Department of Corrections' mail policy violated his First and Sixth Amendment rights. He notes that, under this policy, mail to inmates must be first addressed to SMART Communications in St. Petersberg, Florida, before being forwarded to the proper inmate. He contends that after being sent to SMART Communications, the mail, including privileged attorney communication, is opened, photocopied and placed in a database for seven years before being destroyed. (Am.

---

[4] To the extent Plaintiff raised a due process claim with respect to the destruction of his property, I have already dismissed this claim under 28 U.S.C. § 1915(e)(2)(B)(ii) because Plaintiff had an adequate post-deprivation remedy through the inmate grievance process. See Brock v. Corrections Emergency Response Team, No. 18-3814, 2018 WL 6433907, at *5 (E.D. Pa. Dec. 7, 2018).

Inmates are foreclosed from bringing claims under 42 U.S.C. § 1983 to vindicate a property right where adequate post-deprivation remedies exist under state law. See Hudson v. Palmer, 468 U.S. 517, 532–33 (1984) (intentional deprivation of property); Parratt v. Taylor, 451 U.S. 527, 530 (1981) (negligent deprivation of property). "In Pennsylvania, the state prison system has established an internal grievance procedure through which the state hears claims and, when appropriate, provides remedies [.]" Mattis v. Dohman, 260 F. App'x 458, 461 (3d Cir. 2008). The United States Court of Appeals for the Third Circuit has held that the Department of Corrections' grievance procedure provides an adequate post-deprivation remedy. McNeil v. Grim, 736 F. App'x 33, 34–35 (3d Cir. 2018); Tillman v. Lebanon Cty. Corr. Fac., 221 F.3d 410, 422 (3d Cir. 2000).

Compl. 7.) Arguing that such third-party review of his privileged legal mail violates his constitutional rights, Plaintiff seeks injunctive relief.

Defendants Wetzel and Ferguson respond that the claim is now moot because the challenged policy is no longer in place. Specifically, on April 6, 2019, the Department of Corrections established a new mail policy regarding privileged mail.[5] According to this new policy, "[a]ll incoming, **privileged** inmate correspondence must be addressed and sent to the inmate at the address of the institution where he or she is housed." DCM-ADM 803 § 1(A)(4), https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/803%20Inmate%20Mail%20and%20Incoming%20Publications.pdf (emphasis in original). Privileged mail no longer needs to be sent to SMART Communication. As the challenged policy is no longer in effect, I will deny Plaintiff's claim for injunctive relief as moot.

### D. Remaining Claims Against Unnamed John Doe Defendants

All that remains in this case are the First and Sixth Amendment claims against the John and Jane Doe Defendants. For the same reasons that those claims fail as against Defendants Wetzel and Ferguson, they must fail as against the John and Jane Doe members of the CERT team. See Hindes v. FDIC, 137 F.3d 148, 159 (3d Cir. 1998) (holding that dismissal of claim against named

---

[5] As a general rule, a district court considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) "may not consider matters extraneous to the pleadings" without converting the motion into one for summary judgment. In re Burlington Coat Factory Secs. Litg., 114 F.3d 1410, 1426 (3d Cir. 1997). The rule, however, has three exceptions that permit courts to consider: (1) exhibits attached to the complaint; (2) matters of public record; and/or (3) undisputedly authentic documents integral to or explicitly relied upon in the complaint. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014). A policy from the Department of Corrections is a matter of public record. As such, I make take judicial notice of such a policy. See Leonhauser v. Long, No. 11-241, 2012 WL 398642, at *3 n.2 (M.D. Pa. Jan. 4, 2012) (taking judicial notice of Department of Corrections policy); Schott v. Doe, No. 05-1730, 2007 WL 539645, at *7 (W.D. Pa. Feb. 15, 2007) (same).

defendant requires dismissal of claim against Doe defendants "because an action cannot proceed solely against unnamed parties").

An appropriate Order follows.